FRANCES J. BISHOP *v.* READSBORO CHAIR MANUFACTURING

COMPANY.

May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 9, 1911.

*Husband and Wife—Wife's Realty—Husband's Interest—Injuries to Such Realty—Actions—Parties—Adjoining Landowners— Injury to Adjoining Property—Negligence—Act of God— High Wind—Care Required—Piling Lumber—Snow Slide from Roof—Nuisance—Notice of—Continuance—Grantee— Evidence—Judicial Notice—Matters of General Knowledge— Similar Facts—Malice—Corporations—Misconduct of Officers —Punitive Damages—Opinion Evidence as to the Amount of Damages—Necessity of Objection to Admission of Evidence.*

Where a wife at the time of her marriage was seised of real estate, not con-- veyed to her sole and separate use, her husband by virtue of his marital rights became seised of a freehold interest therein, and was entitled' to the rents and profits thereof during their joint lives.

An action for damages during coverture to the real property of a wife, not held to her sole and separate use, may be brought by the husband' alone, or the wife may be joined, but cannot be maintained in the name of the wife alone.

In tort actions, at least, the objection that a married woman should have sued in her own name alone, or jointly with her husband, can be availed of only by plea in abatement.

In an action for injuries to plaintiff's house by boards being blown against it from piles on defendant's adjoining land, evidence considered and' *held* to warrant the finding of defendant's negligent failure properly to pile and secure the boards.

In an action for injuries to plaintiff's house by boards being blown against it from piles on defendant's adjoining land, while the wind, though high, was not unprecedented, defendant was not relieved from liability on the theory that the injury resulted from an act of God.

As hard winds of the quality that blew boards from piles on defendant's

land against plaintiff's house on adjoining premises might have reasonably been expected, defendant, although entitled to pile lumber on its own land, in doing so was bound to exercise the care of a prudent man to guard against probable damage to plaintiff from such winds.

The grantee of real estate is not liable for an injury resulting from the continuance of a nuisance erected thereon before he came into the estate until he has notice to remove it.

In reviewing the refusal of the trial court to grant a motion for a directed verdict, only the grounds stated in the motion will be considered.

No particular form of notice or request for abatement of a nuisance is required to charge a grantee with liability for the continuance of a nuisance erected on his land before he acquired it, for it is sufficient if such notice informs the grantee of the existence of the nuisance, and of the desire of the party injured to have it removed.

In an action for injury to real property resulting from the continuance of a nuisance erected on defendant's adjoining property before he acquired it, evidence considered and *held* sufficient to warrant a finding of notice of the existence of the nuisance and of plaintiff's desire to have it removed.

It is not error to refuse a requested instruction that is not wholly sound.

Plaintiff is entitled to at least nominal damages for allowing snow to fall from defendant's roof upon plaintiff's adjoining property, for that if long continued, would give a prescriptive right.

A court will take judicial notice of matters of common knowledge within its jurisdiction.

The Court will take judicial notice, as being a matter of common knowledge in this jurisdiction, that roof guards, placed just above the eaves of a roof to prevent snow from sliding off, are in effective use.

In an action for damages resulting from failure to abate a nuisance, where there was other evidence from which the law would imply malice sufficient to warrant an award of exemplary damages, defendant's requested instruction that, if its officers did not come to look at plaintiff's property when requested to do so, that fact was not evidence of wilfulness, wantonness, or malice, was properly refused.

Where plaintiff claimed exemplary damages for the maintenance of a nuisance by defendant in allowing snow to slide from its building onto plaintiff's property, evidence that since the bringing of the suit defendant had knowingly allowed snow to slide from its building against plaintiff's house was admissible to show malice at the time of the injuries complained of, especially as defendant gave no heed to plaintiff's notice of the existence of the nuisance, and her request to abate it.

Where defendant corporation maintained a building adjoining plaintiff's property, and its president, and treasurer, who was also its general manager, after notice, wilfully allowed snow and ice to collect on the roof, and therefrom to slide onto and against plaintiff's house, defendant corporation was liable in punitive damages.

Plaintiff's house was injured by boards being blown against it from piles on defendant's adjoining land, smashing windows, jamming and splitting clapboards, breaking holes in the roof, and breaking the porch from the side of the house. *Held,* that plaintiff's husband was properly allowed to give his opinion as to the amount of damages to the house, under the rule that where a witness has means of personal observation, and the facts that led his mind to a conclusion are incapable of being detailed and described so as to enable anyone but himself to form an intelligent conclusion therefrom, the witness may add his opinion.

The reception of evidence without objection is not reviewable.

CASE for negligence. Plea, the general issue. Trial by jury at the June Term, 1910, Bennington County, *Hall,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. It appeared that plaintiff did not hold the premises in question to her sole and separate use. The opinion states the case.

*Holden & Healy* for the defendant.

As plaintiff did not hold the premises in question to her sole and separate use, *Deitrich* v. *Hutchinson,* her husband had a freehold estate in the property during their joint lives, and so the action should have been brought in his name alone. *Hubbard* v. *Hubbard,* 77 Vt. 73; *Bowen* v. *Amsden,* 47 Vt. 569; *Holton* v. *Whitman,* 28 Vt. 448; 14 Enc. Pl. & Pr. 1107; *Ellis* v. *Kansas City etc. R. Co.,* 63 Mo. 131.

Defendant's motion for a directed verdict should have been granted. The grantee of one who has erected a nuisance is not liable in damages for continuing the same without proof of complaint thereof and notice to remove or abate the same. *Pennruddock's Case,* 5 Coke, 1006; *Pierson* v. *Glean,* 14 N. J. L. 37; *Plumer* v. *Harper,* 3 N. H. 88; *Woodman* v. *Tufts,* 9 N. H. 88; *Eastman* v. *Company,* 44 N. H. 144; *Johnson* v. *Lewis,* 13 Conn. 303; *Pillsbury* v. *Moore,* 44 Me. 154; *McDonough* v. *Gilman,* 3 Allen, 264; *Hubbard* v. *Russell,* 24 Barb. 404; 1 Chitty on Pleadings, 71, 338; Cooley on Torts, 611; Addison on Torts, (Woods Am. Ed.) par. 280; *Ahern* v. *Steel,* 115 N. Y. 203; *Dodge* v. *Stacey,* 39 Vt. 558; Gould on Waters, 694, par. 392;

14 Enc. Pl. & Pr. 111; *Staples* v. *Dickson*, 88 Me. 362; *Howe Scale Co.* v. *Terry*, 47 Vt. 109; *Pettibone* v. *Burton*, 20 Vt. 302.

It was error to submit the question of exemplary damages. 12 Am. & Eng. Enc. 53; *Willet* v. *St. Albans*, 69 Vt. 330; *Wells* v. *B. & M. R. R.*, 82 Vt. 109; *Weston* v. *Gavlin*, 49 Vt. 507; *Boutwell* v. *Marr*, 71 Vt. 1; *Goldsmith* v. *Joy*, 61 Vt. 488; *Merrill* v. *Whitcher*, 53 Vt. 589; *Bradley* v. *Andrews*, 51 Vt. 525; *Hoadley* v. *Watson*, 45 Vt. 289; *Earl* v. *Tupper*, 45 Vt. 275.

It was error to allow plaintiff's husband to give his opinion as to the damage to the house. Wig. Ev. §1924; *Bain* v. *Cushman*, 60 Vt. 343; *Stowe* v. *Bishop*, 58 Vt. 498; 17 Cyc. 41.

*Chase & Daley* for the plaintiff.

In tort actions, a misjoinder, or non-joinder of parties can be taken advantage of only by plea in abatement. 1 Tidd's Prac. 9; *Miller* v. *Millens*, 3 T. R. 627; *Morgan* v. *Painter*, 6 T. R. 365; *Bates* v. *Stevens*, 4 Vt. 545; *Snow* v. *Carpenter*, 49 Vt. 426; *Royce* v. *Vandeusen*, 49 Vt. 26; *Gustin* v. *Carpenter*, 51 Vt. 585; *Ballard* v. *St. Albans Adv. Co.*, 52 Vt. 325; *Briggs* v. *Taylor*, 35 Vt. 57; *Hall* v. *Adams*, 1 Aik. 166; s. c. 2 Aik. 130; *Chandler* v. *Spear*, 22 Vt. 388.

WATSON, J. One ground assigned in the defendant's motion for a verdict, also in its motion to set aside the verdict, is, that from the undisputed evidence the plaintiff at the time the grievances complained of were committed, was and hitherto has been and now is a *feme covert*, living with her husband on the premises alleged to have been damaged by the negligence of the defendant, of which premises the husband was and is seised in the right of his wife, but has not been joined as a party plaintiff in this action.

At the time of the plaintiff's marriage in 1903, she was seised of an estate of inheritance in the premises described in the declaration, and upon the marriage the husband, by virtue of his marital rights, became seised of the freehold; and the law is as claimed by the defendant, that this entitled the husband to the possession of the land, and to the rents and profits, during their joint lives. *Laird* v. *Perry*, 74 Vt. 454,

52 Atl. 1040, 59 L. R. A. 340. Yet the conclusion drawn in
defendant's brief that the action should have been brought
in the husband's name alone does not follow. This suit is merely
for damages to the real property of the wife during coverture,
and for such purpose the husband may sue alone, or the wife
may be joined. In *Armstrong and Wife* v. *Colby*, 47 Vt. 359,
the action was trespass *quare clausum fregit*. On motion in
arrest of judgment it was said that the gist of the cause of action
set forth in each count of the declaration is the breaking and
entering a close alleged to be the plaintiffs' close; that the plain-
tiffs, though husband and wife, might jointly have a close, and
this allegation is in effect that the one in question was theirs
jointly; and that if so it was hers as much as it was his, and
a cause of action for an injury to it would survive to her if she
survive him, and they might sue jointly for such injury. In
*Smith* v. *Fitzgerald*, 59 Vt. 451, 9 Atl. 604, the action was trespass
*quare clausum fregit* brought by the husband alone, for cutting
trees on land of which the plaintiff and his wife were in possession
in the right of the wife, his marital rights being his only interest
in the realty. The case was heard on referee's report. One
question presented was, whether the action could be maintained
in the name of the husband alone for cutting trees on the wife's
land during coverture. Holding that the action was properly
brought, the Court said the law was well settled that an action
of trespass for injuries to the wife's land during coverture will
survive to the husband on the death of the wife, and if the wife
survive any action for a tort committed to her real estate during
coverture will survive to her; and that the principle deduced
from the cases cited in the opinion was, "that in all cases for
injuries done to the wife's land during coverture, where the
right of action will survive to the wife upon the death of the
husband, and to the husband upon the death of the wife, the
husband may sue alone or join with his wife at his election.'"
The same general principle has been held applicable where the
husband was seised of a house for life in the right of his wife,
and leased it for years to a tenant who burned it (Cro. Eliz. 461);
where the action was on the case for cutting down trees, the
lops of which were reserved to the wife for her life (*Tregmiel*
v. *Rieve*, Cro. Car. 437); where the action was on the case for

stopping a way to the land of the wife, as the wrong was done to the wife, the husband having the close in her right (*Baker* v. *Brereman,* Cro. Car. 419); where the action was brought by the dippers at Tunbridge Wells against the defendant for exercising the business of a dipper, not being duly appointed and approved according to a private statute (*Weller* v. *Baker,* 2 Wils. 414, 423). In this last case it was said that wherever the wife is the meritorious cause she may join in the action. To the same effect are also *Abbott* v. *Blofield,* Cro. Jac. 644; *Rose* v. *Bowler,* 1 H. Bl. 109.

In the case before us, the wife's interest in the real property injured does not give the right to sue in her own name alone. Yet to be effective advantage thereof should have been taken in the manner pointed out in the law of pleadings. The rule is, in tort actions at least, that where the *feme* was legally interested before or during coverture in the subject-matter of the action and might properly join in a suit with her husband but sues alone the coverture can only be pleaded in abatement. It cannot be pleaded in bar, or given in evidence under the general issue. 1 Chit. Pl. *449; 1 Saund. Pl. & Ev. 7; *Bates* v. *Stevens,* 4 Vt. 545; *Snow* v. *Carpenter,* 49 Vt. 426.

It is said that the declaration contains no allegations of the wife's interest in the property. However this may be, we pass it without further notice, since neither the declaration nor a copy thereof has been furnished us.

The defendant moved for a verdict on the first count, for that there was no evidence tending to show the defendant guilty of any negligence which caused the injury alleged therein. Hereon it is argued that it nowhere appears in the testimony how high the pile was from which the boards were blown, nor whether the boards in question were blown from a pile near the line between the properties or from a pile erected in another part of the yard, or from one of the piles which were usually in the process of construction.

This position is not well taken. The plaintiff's evidence tended to show that 17.6 feet north of the front of the upright part of plaintiff's house and parallel with it is the south line of School street, and the porch on the front of the house is 6x4¼ feet; that the defendant's land called here the "Mandeville

property," adjoins the plaintiff's land on the west, the line between them running practically at right angles with the line of the street, extending southerly; that this division line is 5.1 feet from the northerly end, and 5.9 feet from the southerly end of the upright part of the plaintiff's house, and the ell part of the house is nearer, it being at the north corner 3.3 feet and at the south corner 4 feet from the line; that on its side of the division line and near to it the defendant has a storehouse,

          feet wide, extending north and south between 86 and 87 feet, the north end of which is about 63 feet from the south line of the street; that the defendant went into possession of its said property, as purchaser, in July, 1907; that most of the time since thus taking possession, the defendant has had pretty much all of its land from the storehouse north to the street next to the plaintiff's line covered with lumber piles, the piles being very near to the line, and occasionally a board would reach over; that soon after defendant began to pile lumber there, and before any damage was done, the plaintiff's husband, noticing the piles and being fearful that the wind might blow them over, spoke to the defendant's manager about it, asking him if it would not be best to wire or fasten the piles down to hold the top boards from blowing off against the plaintiff's buildings and the windows therein, and the manager said he would see about it, but nothing was done by way of fastening them down; that soon after this interview, a heavy wind (in the language of the husband as a witness) "blew the boards here and there and drove some of them through the windows, some of them against the buildings, some of them under the porch to the front door and over into the yard;" that windows were smashed, and the house otherwise damaged; that (again quoting from the testimony of the husband) "at the further side towards School Street, the pile that run the farthest,— it looked as though it had fallen off the top of the pile, the board had, and had fallen over on the top of the porch and jammed the shingles and broke them and jammed the porch away from the side of the building an inch and a half or a quarter." The plaintiff as a witness, being asked whether she could see the pile this board came from, said, "The pile was up like that, and the boards had not been fastened down  *  *  *, and as it slid off

the pile it came right down into the house." The evidence also showed that on two other occasions later boards were blown from these piles over into the plaintiff's yard and on her premises, hitting the side of her buildings and jamming the clapboards on one or both of the occasions.

In this connection it is further argued that the proximate cause of such injury.was not the defendant's negligence, but solely the heavy wind, an act of God for which the defendant is not liable. The only evidence before the court respecting the character of the wind on the occasion when the board or boards were blown through plaintiff's windows, and of the winds to which that place is subject, was introduced by the plaintiff, and was unconflicting. In substance it was, that on the occasion referred to, there was a heavy, hard wind, accompanied by hail, sleet, and snow. On being cross-examined by defendant's counsel touching the wind on that occasion, the witness testified as follows: Q. "The wind must have been blowing hard that night. A. Yes, sir. Q. Whether that was usual? A. I have seen it blow at other times as hard." In answer to another question in cross-examination the witness said: "It is a hard place for winds, it is all open and the wind blows harder than it used to on School Street." Another witness who lived five years on this place before the plaintiff purchased it in 1894, was asked in cross-examination, Q. "You have some hard wind storms over there?" and answered, "Some hard winds."

The plaintiff being cross-examined regarding the board that came into her window, testified as follows: "Q. The first was the one that went through the pantry window? A. Yes. Q. How big was that board? A. My windows are 14x30, I should say a foot wide and 7 or 8 or 9 feet long, a heavy board. Q. That must have been quite a wind that day? A. It was, but we have quite winds." This evidence shows an ordinary hard wind, such as frequently occurs at that place. at such season of the year. It does not show such an extraordinary or unprecedented wind as may properly be termed in law an act of God.

In thus piling lumber at the place shown by the testimony the defendant was engaged in a lawful business on its own land.

Yet in so doing it was in duty bound to exercise due care against infringing the legal rights of the owner of the adjoining property. As ordinary hard winds of the character of that on the occasions in question are such as might have been reasonably expected to occur there, the defendant was bound to know that fact and, in piling lumber, to exercise the care and prudence of a prudent man in like circumstances to guard against the probable consequences of such winds. The evidence on the part of the plaintiff tending to show negligence by the defendant in this respect was such that a verdict for the plaintiff might reasonably and properly be based thereon, and there was no error in submitting it to the jury. *Vaughan* v. *Menlove*, 3 Bing. N. C. 468, 18 Eng. Rul. Cas. 715; *Mayor of New York* v. *Bailey*, 2 Denio 433; *Dunslach* v. *Hollister*, 49 Hun., 352, affirmed in 132 N. Y. 602; *Washburn* v. *Gilman*, 64 Me. 163, 18 Am. Rep. 246; *Garland* v. *Towne*, 55 N. H. 55, 20 Am. Rep. 165.

The defendant moved for a verdict upon the second count, stating four different grounds therefor, but reliance is now placed only upon the first two: that there was no evidence showing the defendant guilty of any negligence which caused the injury in the count complained of, and that by the undisputed evidence the defendant did not erect the building from the roof of which the snow is alleged to have slid. The motion was properly overruled.

As to the first ground the evidence shows beyond question that snow was allowed to slide from defendant's roof onto the plaintiff's premises and against her house to her injury as alleged, and that defendant did nothing to prevent it. The second ground requires a more extended consideration.

The "Mandeville property" was purchased by the defendant on December 5, 1906, but possession thereof could not pass under the deed of conveyance until May 1, 1907, and did not in fact till July following. At the time the defendant purchased this property the storehouse was on it just as it is now—no change has since been made in the location of the building, nor in the building itself. It is contended that the damages sought to be recovered by reason of snow sliding from the roof of the building were suffered before any notice from the plaintiff to the defendant to abate the nuisance, and consequently no

recovery can be had therefor.    Treating this as within the motion (though it seems otherwise) the general rule of law that the grantee of an estate is not liable for an injury resulting from the continuance of any nuisance erected thereon before he came to the estate, until he has notice to remove it, is well established. *Pettibone* v. *Burton*, 20 Vt. 302; *Dodge* v. *Stacy*, 39 Vt. 558; *Howe Scale Co.* v. *Terry*, 47 Vt. 109.    Whether liability attaches after notice of the existence of the nuisance, without a request for its removal, we need not consider, for in the case before us we think the plaintiff's evidence fairly amounted to both. The transcript of the evidence is made a part of the exceptions for the purpose, among other things, of testing the accuracy of the statements in the bill of exceptions as to the meaning and tendency of the testimony, and is made to control.    The bill does not accurately state the tendency of the plaintiff's evidence in this respect.    The plaintiff's husband testified as follows: Q.    "Was there a time soon after the Readsboro Chair Company bought that property when you had a talk with one of the officers about that snow?    A. Yes, sir.    Q. And whom did you talk with?    A. I talked with Mr. Clark, Mr. A. B. Clark. Q. What was your talk about this snow?    A. I spoke to Mr. Clark I think two or three times in regard to that snow and asked him to put some snow protectors on to hold the snow on his roof and not let it come onto us.    Q. What did Mr. Clark say about that?    A. He said he guessed it could be fixed. Q. What did he say he would do?    A. He said he would look it over, he did not tell me whether he would or would not do it, in regard to the roof.    Q. Did you speak to Mr. Clark about a protector or did he speak about a protector?    A. I spoke to him first.    Q. Was anything done about it?    A. Never, no, sir."

No particular form of notice or request is required, and it may be either written or oral, or by acts done.    If it informs the party to be affected by it of the existence of the nuisance, and of the desire of the party injured to have it removed, so that the person to whom it is addressed fully understands the ground of the complaint, and that the party giving it is unwilling to have it continue, it is sufficient.    *Carleton* v. *Redington*, 21 N. H. 291; *Snow* v. *Cowles*, 26 N. H. 275; *Conhocton Stone*

*Road* v. *Buffalo, etc., R. Co.,* 51 N. Y. 573, 10 Am. Rep. 646. It is further argued that it does not appear that Clark was engaged in the buisness of the corporation at any of the times when Bishop spoke to him about the snow, that what Bishop said was intended for the corporation, or that Clark had any authority in respect thereof, so that notice to him would bind the corporation. These are questions not covered by the motion, and therefore not considered. It is said in defendant's brief that the statement in the bill of exceptions that the evidence of the plaintiff tended to show that her husband acted in all these matters as her agent is not warranted by the testimony. The plaintiff, when on the stand as a witness, was asked what she did, if anything, in regard to notifying the defendant or its officers, the president or manager, in regard to this snow that came off their roof against her house, and answered, "Mr. Bishop went and spoke to"—. She was then interrupted by the court, with the question whether she heard the talk, and answered in the negative. Her answer before such interruption, viewed in the light of the question asked, fairly means that she sent her husband. In cross-examination, having testified concerning the occasion of the boards first being blown against her house, was asked whether she had spoken "about the boards to Mr. Newton or to Mr. Clark before that time." To which she answered, "I had sent word to Mr. Clark. I did the next morning after the storm, asking him to come up." Again, "Q. You never had any talk with him (Mr. Newton) before the suit was brought? A. No, I always sent word to Mr. Clark." In redirect examination, she testified also to sending Mr. Clark word after the snow came into the house, to come up and see that, she wanted him to see the broken glass, but that neither he nor any one else from the company came. There was evidence that the plaintiff on one occasion sent Mr. Clark a letter respecting the boards, but there was no evidence that she ever sent him word regarding the snow from defendant's roof, other than by her husband. The plaintiff further testified that before her marriage to Mr. Bishop she attended to her own business, and attended to and cared for her buildings and made repairs on them. She was then asked whether since her marriage to Mr. Bishop he had helped her somewhat. To

which she answered, "On the outside but he don't in the inside. I look after my own business inside just the same." This testimony of the plaintiff is for consideration in connection with the other testimony showing the relation of husband and wife, and with the testimony of the husband as to what he did soon after the defendant entered into possession of the "Mandeville property" by way of seeing the defendant's manager about fastening down the piles of boards to prevent the top boards from blowing against the plaintiff's buildings and the win'lows, and in notifying the defendant regarding the sliding of snow from the roof of the storehouse onto his wife's land, and requesting that it be remedied, and his acts thenceforth to the bringing of this suit. Thus considered we think the evidence fairly warrants the statement in the bill of exceptions, respecting the tendency of the plaintiff's evidence as to the agency of the husband for the wife.

It may be said also that the evidence was sufficient to go to the jury on the question of agency by ratification. Mr. Greenleaf says, "The acts and conduct of the principal, evincing an assent to the act of the agent, are interpreted liberally in favor of the latter, and slight circumstances will sometimes suffice to raise the presumption of a ratification, which becomes stronger in proportion as the conduct of the principal is inconsistent with any other supposition." 2 Greenl. Ev. Sec. 66. Moreover, the bill of exceptions further states that the fact of such agency was not contradicted by the defendant. And in addition thereto the course of procedure during the trial, as shown by the transcript, was that the husband was acting for the wife. No objection was made by the defendant to the husband's testimony as to what he told Mr. Clark, treasurer, also manager, of defendant company, soon after the company took possession of the "Mandeville property," regarding the snow coming from the roof of the storehouse on to the wife's land, etc., except that it was immaterial, "on the ground that the defendant owes the plaintiff no duty in respect of this roof and the snow on it."

Defendant excepted to the non-compliance with its seventh request to charge: that the jury should not include in any damages to which they might find the plaintiff entitled any

sum for labor performed by the plaintiff's husband.  The evidence tended to show that whatever the husband did in the way of making repairs on the plaintiff's house consequent on the injuries in question in this case he did for his wife and at her expense.  As to such labor it could not be ruled according to the request as a matter of law.  The request being unsound in that respect, we need not consider how it was with reference to labor in removing the snow that slid from the defendant's roof.  Its refusal was not error.

Defendant also excepted to the failure of the court to charge in conformity to its tenth request, which was, that the plaintiff could not recover for any damage by reason of the accumulation upon the ground of snow which fell from the defendant's roof.  This request was properly disregarded.  Such an invasion of the plaintiff's rights, if continued long enough, would give the defendant a prescriptive right, and hence the plaintiff is entitled to nominal damages at least.  *Willey* v. *Hunter,* 57 Vt. 479.

In ignoring the ninth request, that before the jury could award the plaintiff damages by reason of snow sliding from the defendant's roof, she must prove by a fair balance of the evidence that there existed and was known to the defendant some means by which such an occurrence could be prevented, the court acted well.  It is a matter of common knowledge that roof-guards placed just above the eaves of a roof to prevent snow from sliding off are in effective use.  And of matters of general knowledge within its jurisdiction a court will take judicial notice, and no evidence thereof need be given by the party alleging their existence.  Stephen's Digest of Ev. (Chase's Ed.) 173; *Hoyt* v. *Russell,* 117 U. S. 401, 29 L. ed. 914.

The eleventh request, that the fact, if it be found, that defendant's officers did not come to look at the property when requested to do so by the plaintiff is not evidence of wilfulness, wantonness, or malice, on the part of the defendant was properly refused.  How it might be, were the acts to which reference is there made the only matters of conduct by said officers upon which the plaintiff relies as affording a basis for exemplary damages, we need not consider.  For taken with the other acts of the officers appearing from the evidence, the case shows such a wanton invasion of the plaintiff's rights as in law to imply malice.

Subject to objection and exception the plaintiff was permitted to testify that since the bringing of this suit the snow had slid from defendant's storehouse against her house. This evidence was admitted solely as bearing upon the motive and intent of the defendant at the time of the happening of the injuries for which she seeks to recover. In view of the fact that the defendant gave no heed to the plaintiff's notice of the existence of the nuisance, and her request to abate it, we think the fact that after the suit was brought the defendant knowingly permitted such nuisance to continue to the further annoyance of the plaintiff, was evidence tending to show malice at the time of the injuries complained of. It was in principle like a repetition of the slanderous words by the defendant subsequent to the bringing of the suit for damages resulting therefrom. Evidence of such repetition has been held to be admissible for the purpose of showing the animus of the defendant at the time in question. *Rea* v. *Harrington*, 58 Vt. 181, 2 Atl. 475, 56 Am. Rep. 561; *Knapp* v. *Fuller*, 55 Vt. 311, 45 Am. Rep. 618.

The question of the responsibility of the defendant for such conduct on the part of its officers, if shown, is presented. The defendant asserts non-liability and in support thereof invokes the rule laid down in *Willett* v. *St. Albans*, 69 Vt. 330, 38 Atl. 72, and followed in *Wells* v. *Boston & Maine R. R.* 82 Vt. 108, 71 Atl. 1103, 137 Am. St. Rep. 987. The doctrine of these cases is, that where the offender is the agent or servant of a corporation, the principal can be made liable for this class of damages only when it has either directed, participated in, or subsequently approved, the misconduct of the agent or servant. In the case at bar, the defendant's officers, whose acts have been established by the verdict as wanton, wilful, and malicious, are the president and the treasurer of the corporation, the latter being also the manager of the company. The question is, whether the official relation of the offenders to the corporation distinguishes this case from the two cases named. In the Willett case the action was to recover for damages sustained by the negligence of the defendant, a municipal corporation, in the construction and maintenance of its sewer. The negligence was that of the municipal trustees in not properly connecting certain sewers, etc., by reason of which sewage accumulated

in the brook near the dwelling occupied by the plaintiff, and the trustees, though notified thereof several times, did not remedy the defects, etc. Holding that exemplary damages could not be awarded against the municipality unless it, in some legal way, either authorized or subsequently approved of the wrongful act or neglect, the Court said the trustees of such a corporation can act only by a majority vote; that they are the business managers of the corporation, but after once elected, the voters and taxpayers on whom such damages must fall if awarded, cannot, during their term of office, discharge them, and usually cannot control their action, within the scope of their office. The Wells case was trespass for assault and battery by the conductor of the defendant railroad, in forcibly ejecting a passenger from the train. In *Denver and Rio Grande R. Co.* v. *Harris*, 122 U. S. 597, 30 L. ed. 1146, 7 Sup. Ct. 1286, the action was to recover for injuries sustained by the plaintiff in his person, by reason of an illegal and wrongful assault made by the railroad company's agents and employees acting under its vice-president and assistant general manager. The Court, speaking through Mr. Justice Harlan, said that from the evidence the defendant, within the meaning of the rule holding corporations responsible for the misconduct of their servants in the course of its business and of their employment, directed that to be done which was done; and it was held that the doctrine of punitive damages should apply upon the ground that the evidence clearly showed that the corporation, by its governing officers, participated in and directed the things planned and done. In *Lake Shore & Mich. S. R. R. Co.* v. *Prentice*, 147 U. S. 101, 37 L. ed. 97, 13 Sup. Ct. 261, the doctrine of which was followed in *Willett* v. *St. Albans*, the Court, speaking by Mr. Justice Gray, after noticing the Denver and Rio Grande Railroad Company case, said: "The president and general manager, or, in his absence, the vice-president in his place, actually wielding the whole executive power of the corporation may well be treated as so far representing the corporation and identified with it, that any wanton, malicious or oppressive intent of his, in doing wrongful acts in behalf of the corporation to the injury of others, may be treated as the intent of the corporation itself. But the conductor of a train, or other subordinate agent or servant of a

railroad corporation, occupies a very different position, and is no more identified with his principal, so as to affect the latter with his own unlawful and criminal intent than any agent or servant standing in a corresponding relation to natural persons carrying on a manufactory, a mine, or a house of trade or commerce."

We think the distinction drawn by the Federal Supreme Court in these two cases is logically sound in basis, just and reasonable. In principle the same distinction is often made in negligence cases between the acts of a servant and the acts of those representing the master, as affecting liabilty. A corporate body in the management and prosecution of its business necessarily acts through its governing officers, and therein, as to third persons with whom they are brought in contact or collision, such officers stand to all intents and purposes as the corporation itself, and all acts done and performed by them in the course of its business and of their employment, whether *in contractu* or *in delicto*, are characterized accordingly. Within the meaning of the law the corporation participates therein, and it is responsible for the consequences the same as an individual is responsible in similar circumstances. *Philadelphia, W. & B. Railroad Co.* v. *Quigley*, 21 How. 202, 16 L. ed. 73. It follows that if such acts be of a character to give a right of action against the corporation in form appropriate for the allowance of punitive damages and, as in the case before us, the evidence affords a proper basis therefor, they may be awarded.

The plaintiff's husband was permitted to testify his opinion as to amount of damages to her house, resulting from the boards being blown against it. The defendant objected thereto solely upon the ground that opinion evidence is not admissible for that purpose. The evidence shows the injuries to the house, so caused, to be in general the smashing of windows, the jamming and splitting of clapboards in different places on the house, the breaking of a hole or holes in the roof of the porch, and the porch from the side of the house. The general rule in this State is against the admission of this class of evidence for such purpose. *Cavendish* v. *Troy*, 41 Vt. 99; *Bates* v. *Sharon*, 45 Vt. 475; *State* v. *Ward*, 61 Vt. 153, 17 Atl. 483; *Bain* v. *Cushman*, 60 Vt. 343, 15 Atl. 171. Yet this rule has its exceptions, one of which is

stated and was applied in the former case: where the witness had the means of personal observation, and the facts and circumstances which lead his mind to a conclusion are incapable of being detailed and described so as to enable any one but the observer himself to form an intelligent conclusion from them, the witness is often allowed to add his opinion, or conclusion. We think the present case in the respect named falls within this exception to the general rule rather than within the rule itself and that therein the ruling of the trial court was without error.

Subject to objection the plaintiff's husband was permitted to testify that after the first injury to the house by the boards when he spoke to the defendant's manager about it, asking him if he was going to continue piling boards and not fasten them down, the manager said he had told their foreman who had charge of the lumber in the yard to fix it either by weighting it or wiring the boards to hold them. The objection made was, that the defendant was not obliged to weight the boards and therefore the evidence is immaterial. The court rightly ruled that whether it was immaterial or not depended on what a careful and prudent man would do. The witness was further allowed to testify that quite a little while after that the boards were wired down. It is argued that this also was error. However, the evidence was received without objection, and the question is not before us.

This in effect disposes of all the points in defendant's brief.

*Judgment affirmed.*