## CHARLES BACKMAN *v.* EDWARD MUSSEY.

### *Contract. Intoxicating liquor.*

D., the agent of the plaintiff, who was a liquor dealer in New York, received in this State from the defendant, who had no authority to sell intoxicating liquor, an order for a quantity of such liquor. D. sent this order to the plaintiff, who forwarded the defendant the liquor. At the same time D. informed the defendant, and it was so understood between them, that the latter could order directly from the plaintiff in New York any liquors he might thereafter want. Such orders were from time to time sent by the defendant to the plaintiff, and the liquors so ordered were sent to the defendant, who received them in this State at a railroad station, and paid the freight upon them from New York; *Held*, that the plaintiff could recover for all the liquors furnished upon orders sent him directly by the defendant, but not for those furnished upon the order sent through D.

BOOK ACCOUNT. The auditor reported the following facts :

The plaintiff was, when his account accrued, a liquor dealer doing business in the city of New York, and the defendant, during the same time, was a tavern keeper in Middlebury in this State. The plaintiff's account was for spirituous and intoxicating liquors furnished the defendant, and sold by him at his tavern in violation of the statute of 1852, and the subsequent acts on that subject.

It appeared that in May, 1856, one Drew, the plaintiff's agent, called on the defendant in Middlebury, and wished to furnish him with a supply of spirituous liquors for his tavern ; that the defendant consented that Drew might order a quantity of liquor for him, and gave him a list of the kinds he then wanted ; and that these were ordered by Drew and duly received by the defendant, amounting to three hundred and twenty-six dollars and sixty-three cents, and constituting the first item in the plaintiff's account. The defendant was at that time informed by Drew, and it was so understood between them, that the defendant could order directly from the plaintiff any liquors he might subsequently want ; and orders for liquors were afterwards from time to time sent by the defendant to the plaintiff at New York, without specifying any particular mode of conveyance by which they were to be sent, in pursuance of which the liquors, constituting the remainder of the plaintiff's account, were sent from New York by common carriers, and were received at the railroad depot at Middlebury by the defendant, who paid the freight and charges on them from New York.

Drew was fully informed from the first what the defendant's business was, and to what use the liquors were to be put, but it did not appear that the plaintiff himself had any knowledge in regard to these points.

The account presented by the plaintiff contained several credits for money paid by the defendant at different times, subsequent to the defendant's receipt of liquor upon the first order sent by him directly to the plaintiff at New York, the whole amount of which credits, however, was less than the price of the liquors sent the plaintiff by the defendant upon such orders. The whole amount of the plaintiff's account, including the three hundred and twenty-six dollars and sixty-three cents ordered of Drew at Middlebury,

was nine hundred and sixty-eight dollars and twenty-eight cents, and the amount of the credits was five hundred and fifty-seven dollars and fifty cents.

It did not appear whether the parties intended that any of these payments should be applied upon the first item of the account or not, but it did appear that at the time the liquors were purchased, both parties understood that they were sold upon a credit.

Upon these facts, as reported by the auditor, the county court, at the June Term, 1858,—BENNETT, J., presiding,—rendered judgment for the defendant, to which the plaintiff excepted.

*E. R. Hard* and *J. French*, for the plaintiff.

The plaintiff is at least entitled to recover the amount of his account against the defendant, deducting the first item, ordered through Drew.

The validity of a contract is to be determined by the law of the place where the contract is made. If valid there, it is valid and will be enforced elsewhere.

A very few exceptions have been established to this rule on account of public policy, but none of them embrace this case; *Holman* v. *Johnson*, 1 Cowper, 341; *Brown* v. *Duncan*, 21 E. C. L. 29; *Johnson* v. *Hudson*, 11 East 180; *Hodgson* v. *Temple*, 5 Taunt. 181; *Case* v. *Riker*, 10 Vt. 482; *Territt* v. *Bartlett*, 21 Vt. 184; *McConihe* v. *McMann*, 27 Vt. 95; *Backman* v. *Wright*, 27 Vt. 187; *Pelicat* v. *Angel*, 2 C. M. & R. 311; *Merchant's Bank* v. *Spaulding*, 12 Barb. 302; *McIntyre* v. *Parks*, 3 Met. 207.

The sale of spirituous liquors is valid by the laws of the State of New York (and is not in itself immoral or reprehensible) ; and the contracts for the liquors charged in the plaintiff's account, subsequent to the first item, were made and completed in that State.

The property was delivered in New York, in pursuance of orders sent there to the plaintiff by the defendant, and there is no pretence that the plaintiff personally participated in any sale in this State.

The fact that the defendant understood from the plaintiff's agent, that he (the defendant) could order liquor directly from the plaintiff, does not invalidate the sales or render them any the less

New York transactions. It was a piece of information communicated to the defendant which he might act upon or not, as he chose, and which was entirely separate and distinct from the contracts. It had no connection with the proposals made by the defendant and their acceptance by the plaintiff, which constituted the sales.

If the understanding between Drew and the defendant was any part of the contracts, it would follow that if the plaintiff had not forwarded the liquor on the orders sent by the defendant, it would have been a breach of the contract, and this will not be claimed.

*Briggs & Nicholson*, for the defendant.

1. The contract of sale of all the liquors in this case was made in Vermont, and is invalid. All the liquors were obtained under a *general* contract with Drew, and no *new* contract was made with the plaintiff. *The contract was "that the defendant could order directly from the plaintiff any liquors he might subsequently want."* The orders sent to the plaintiff involved no *new* contract, but were sent in pursuance of the *general continuing contract with Drew; Backman* v. *Wright*, 27 Vt. 187.

2. But if this were not so, the plaintiff can not recover upon the first item charged in his account of three hundred and twenty-six dollars and sixty-three cents. The liquors constituting this item were sent in pursuance of a contract made with Drew *personally*, and *in this State.* And Drew was the plaintiff's agent; *Backman* v. *Wright*, 27 Vt. 187.

The payments were made to apply on the *account generally*, and no specific application was made by either party.

The court will apply these payments first, in extinguishment of that portion of the account which constitutes a legal debt. This doctrine is fully settled in the concluding paragraph of the opinion of the court in the case above cited; *Backman* v. *Wright*, *supra; Bancroft et al.* v. *Dumas*, 21 Vt. 456; *Wright* v. *Laing*, 3 B. & C. 165.

POLAND, J. All the points made in this case seem to be decided in the case of *Backman* v. *Wright*, 27 Vt. 187.

The contract for the first bill of liquors charged in the plain-

tiff's account was so far made in this State, though consummated by a delivery without the State, as to be invalid here.

The residue of the liquors charged in the plaintiff's account, were forwarded to the defendant by the plaintiff from New York, in answer to orders sent to him by the defendant, by common carriers, the defendant paying the charges for freight.

This alone would constitute a contract of sale, and a delivery to the defendant in New York, where such a sale would not be illegal. The defendant claims that the facts reported by the auditor show that the contract, or some portion thereof, was made in this State between the defendant and Drew, the plaintiff's agent. But we think this claim is not well founded. It would seem that the defendant learned from Drew that the plaintiff was a liquor dealer in New York, and that he could procure liquors of him by sending his orders to him, but it does not appear that anything in the nature of a contract was made between them; that Drew contracted to sell any liquors to the defendant, or that the defendant agreed to purchase any, or that Drew agreed that if the defendant sent orders to the plaintiff they should be answered, or that he should have any liquors he ordered at certain fixed prices, or on any specified time of credit. In short, it does not appear that it amounted to anything more than information to the defendant that if he wanted more liquors he could get them by sending orders to the plaintiff.

The plaintiff then should have been allowed to recover his account, except the first bill, after deducting the payments.

The judgment is therefore reversed, and judgment rendered for the plaintiff for the balance due him, disallowing the first bill charged in his account.