OTIS C. SAWYER *v.* AUSTIN HOWARD AND TRUSTEE.

Special Term at Brattleboro, February, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 20, 1912.

*Payment—Application—Waiver.*

An unauthorized application of a payment may be ratified, and where defendant, after he had been sued by plaintiff on a number of notes, sent him a check to apply "on the suit," and plaintiff applied it on the earliest note, on which the Statute of Limitations had run, but which was secured by a collateral note, by not objecting when

those two notes were later returned to him, nor for a year thereafter, defendant waived all right to have the payment applied on those notes on which the Statute of Limitations had not run.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by court at the June Term, 1911, Windsor County, *Butler,* J., presiding. Judgment for the plaintiff. The defendant excepted. The opinion states the case.

*William Batchelder* and *Charles Batchelder* for the defendant.

*Wallace Batchelder* and *John J. Wilson* for the plaintiff.

POWERS, J.   After this suit had been brought, the defendant sent the plaintiff's attorney a check to take up one of the notes in his hands for collection, and promised early payment of another. But the attorney returned the check and informed the defendant that he would not treat with him on the basis of a claim represented by notes, but would accept a payment on the suit. Whereupon, the defendant sent another check for the exact amount in a bank which had been trusteed, saying that the cashier of the bank said that he could see no reason why it should not be received as a payment on the suit, and asking for a statement of the balance due. The attorney turned this check over to the plaintiff, who drew the money on it, and attempted to apply so much as necessary to the liquidation of a note dated August 14, 1901, and the balance on a note for $257.39.

What he actually did was this: He indorsed $250 on a note for $200, signed by Parker & Slayton, which was held as collateral to the note of August 14; he wrote across the face of the last named note, "This note paid in full"; and he indorsed $128.65 on the note for $257.39.

When the attorney received the second check, he made prompt acknowledgment thereof, and wrote the defendant that he had sent it to the plaintiff advising him that it was paid on the suit. He also enclosed a statement, describing four notes, signed by the defendant, payable to A. B. Preston, and transferred to the plaintiff—two of which he described as follows:

First note dated Oct. 17, 1901, for $200, with indorsement thereon of $250, Nov. 17, 1909.

Second note dated Mar. 29, 1909, for $257.39 with indorsements thereon of $23, Aug. 23, 1909, and $128.65, Nov. 17, 1909.

The date thus given of the first note was that of the collateral note, but in other respects this was a good description of the note of Aug. 14, 1901.

The next day, Nov. 18, 1909, the defendant again wrote the attorney asking for an itemized statement, carrying out each item so that he could fully see what it was.

All this was before any specification had been filed by the plaintiff, and it does not appear that the defendant had previous knowledge of just what notes the suit was brought on, though it appeared that he knew that there was more than one.

On December 7, 1909, the plaintiff filed a specification of his claim, which was substantially a copy of the statement sent the defendant as stated. Afterwards, on August 16, 1910, he filed an amended specification, in which he dropped out the note standing first in the original specification, and described the second note as before, except as to the indorsement which was stated as $57.90. And finally, at the trial, which was in August, 1911, he amended his original specification by changing the date of the first note to August 14, 1901, thus correcting the error made therein.

The plaintiff kept this note of August 14 and the collateral note until August 16, 1910, when he sent them to the defendant in a letter saying: "I am enclosing your note to A. B. Preston for $200.00 and the Parker & Slayton note for the same amount turned over to him as collateral security." The defendant received these notes, retained them without protest, and still retains them.

It is agreed that the payment made by the second check was made and received to apply "on the suit," and that any other application would be improper. The plaintiff says that this expression "on the suit" should be held to mean the notes on which the suit was predicated, and since it is found that the suit, which is in general assumpsit, was brought to recover on four notes, which include the one dated August 14, the plaintiff's application is justified. On the other hand, the defendant insists that the expression should be held to mean the amount which should ultimately be found due in the suit; and, since the court tried the case as if the statute of limitations had been

pleaded, he should have the benefit of the statute without regard to the payment.

But we are not required to say what meaning should be assigned to the expression "on the suit," for an unauthorized application of a payment can be ratified, and the case shows that the defendant, by his conduct, has fully ratified and approved the application of this payment as made by the plaintiff. As early as November 18, 1909, he learned that the plaintiff had used a part of his payment upon a note which had already outlawed. Whether he had previously known that such a note was among those held by the plaintiff became immaterial, for it is plain enough that he then understood that he was being called upon to pay an old note—one not of the series to which the others belonged, and one on which the statute had already run. Yet he made no protest or complaint. Nor is this all: he received from the plaintiff the note of August 14, with the collateral note, and it must then have been made plain to him just what had been done with his payment. With full knowledge, then, he retained these notes a year without complaint, and even at the trial did not offer to return them. It cannot be said that these notes were of no value to the plaintiff, for though the defendant is disposed to avail himself of the statute of limitations and though the collateral note has outlawed, its signers may have a more lively sense of their obligation and not be disposed to seek the protection which the statute affords. The chance of collecting the collateral note belongs to the plaintiff, and he could be deprived of it only by payment of the principal note. By retaining the benefits of the application as made with full knowledge of the facts, he must be held to have ratified it, whatever his rights were when he first discovered what the plaintiff had done.

*Judgment affirmed.*