P. BALLANTINE & SONS *v.* ETTA M. FENN AND FREDERICK FENN.

May Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON AND TAYLOR, JJ.

Opinion filed October 14, 1914.

*Intoxicating Liquors—Sale—Place of Contract—Husband and Wife—Rights of Husband—Real Property of Wife—Bankruptcy—Claims—Security Against Property of Third Person—Principal and Surety—Liability of Surety—Ratification—Payment by Principal—Ratification of Payment—Application of Payment—Findings of Fact.*

Where intoxicating liquors were sent into this State by a dealer outside thereof, on receipt of orders sent from within this State by the purchaser who paid the freight, all in accordance with a previous arrangement made outside of this State, the place of the contract was without this State, although a mortgage was taken in this State to secure the purchase price. *Beverwick Brewing Co.* v. *Oliver,* 69 Vt. 323, *distinguished.*

Where a mortgage is executed in this State to secure a note given for a loan of money simultaneously made in this State, and also to secure the performance of a contract made outside of this State for the purchase of goods, the two secured liabilities are severable, and the fact that the loan was made in this State does not affect the place of making the contract for the purchase of the goods.

A husband has a freehold interest in his wife's real estate that is not held to her sole and separate use.

Security on property not the property of the bankrupt does not make the creditor a "secured creditor" within the meaning of the federal bankruptcy law, and so where a creditor, whose claim against a bankrupt was secured by a chattel mortgage on the bankrupt's property and by a mortgage on the real estate of his wife, made full disclosure in the bankruptcy proceedings as to his security, and the bankrupt denied having any interest in the real estate covered by the mortgage, the proving of the claim against the bankrupt estate and the receipt of a dividend thereon did not constitute a waiver of the mortgage on the real estate.

Where a contract for the sale of goods and a loan by the seller to the buyer were secured by a mortgage executed by the buyer and his wife as surety, and the agreement between the seller and the buyer provided that the discounts to which the buyer was entitled should be applied upon the loan, the wife is entitled to have the discounts so applied, notwithstanding a subsequent agreement between the seller and the buyer, of which his wife had no knowledge, that they should be otherwise applied.

Where each of two parties sold goods to a buyer, and the account of one was secured by a mortgage on the real estate of the buyer's wife, the making of checks by the buyer, payable to the secured seller, was a direction by the buyer to apply payment on the account of that seller, and, when the buyer made a check payable to both sellers, and sent it to either, that was a direction that in the application the proceeds be divided between them, and the wife is entitled to have the mortgage indebtedness determined on that theory.

A finding that the applications were made by the secured seller in accordance with the original agreement of the parties "and the state of the accounts" is not a finding that the applications were made in accordance with the original agreement.

The failure of a buyer to object to the application of payments contrary to his direction was not a ratification of such application, for, since he had already directed a designated application, he could not be compelled to repeat his directions.

Where each of two parties sold goods to a buyer, and the whole account of one was secured by a mortgage on the real estate of the buyer's wife, when payments were received by the secured seller they were by law applied to the extinguishment, *pro tanto*, of the secured debt, regardless of formal indorsement on the note, or entry of credit on the account, and no subsequent ratification by the husband of any other application could affect the wife's rights.

APPEAL IN CHANCERY, Rutland County, March Term, 1914, *Fish,* Chancellor. Heard on the pleadings, master's report, and defendants' exceptions thereto. Exceptions overruled, and decree for the orator. The defendants appealed.

The petitioner is engaged in the business of brewing and selling malt liquors, having its brewery in Newark, N. J. and its

office and salesroom in New York City, but had no license to sell intoxicating liquors in Vermont. There was also another concern, operated by the same persons under the name of Ballantine & Company, and engaged in the manufacture and sale of lager beer only. Defendant, Frederick Fenn, resided in Rutland, Vt. and, in the spring of 1903, he obtained a first class license to sell intoxicating liquors in Rutland, and in the years 1905, 1906. and 1907, obtained a second class license. In February, 1903, and before obtaining his license for that year, said Frederick Fenn went to New York City and there entered into an agreement with the petitioner whereby it was to make him a loan of $4,000, without interest, and he was to purchase all of his malt liquors of them and of said Ballantine & Company; and said loan, the purchase price of any goods bought by said Fenn from petitioner, and any other of his debts to it, were to be secured by a mortgage on the real estate of defendant, Etta M. Fenn, wife of said Frederick, and by a chattel mortgage on his goods in the store.

In April, 1903, the petitioner's manager came to said Rutland, with a check for $4,000, the amount of the proposed loan. Thereupon a note for $4,000, payable to petitioner, and the mortgage here in question were there executed by defendants, and defendant Frederick Fenn also executed a chattel mortgage to petitioner on his goods in the store. The check was delivered to said Frederick, and the note and mortgages were delivered to petitioner's said manager. The mortgage here in question is conditioned for the payment of said $4,000 note, and for the payment to petitioner of "all moneys now due" petitioner "or hereafter to become due to said" petitioner "from said Frederick Fenn on open account or otherwise." After procuring his license in 1903, said Frederick Fenn from time to time, by mail or telegraph as occasion required, ordered goods of petitioner and of said Ballantine & Company, which were shipped to him and charged at the agreed prices. The other material facts are recited in the opinion.

*Lawrence, Lawrence & Stafford,* and *T. W. Moloney* for the orator.

*Charles L. Howe* and *Walter S. Fenton* for the defendants.

The place where an agreement is finally consummated is the place of the contract. *Born* v. *Home Ins. Co.*, 120 Iowa 299, 94 N. W. 849. Where a contract contemplates the execution of deeds or other contracts, making payments or doing other legal acts in another state, the law of the place where the acts are to be done will govern the contract. *Carnegie* v. *Morrison*, 43 Mass. 381. The payment of the $4,000 and the giving of the note and mortgage was a condition precedent to the completion of the contract. Until the fulfillment of that condition the contract for the sale of the liquors was executory, and could only become executed and complete upon the execution and delivery of the note and mortgage, and the delivery of the $4,000. These conditions being complied with in the city of Rutland, the sale of the liquors was completed in Vermont and was illegal. *State* v. *O'Neil*, 58 Vt. 140, at page 159; 144 U. S. 323, 36 L. ed. 450. It being an entire contract, if any part of it was made in the State of Vermont, it was illegal under the laws of Vermont, and the orator cannot recover for the liquors sold by virtue of the contract. *Beverwick Brewing Co.* v. *Oliver*, 69 Vt. 323; *Starace* v. *Rossi*, 69 Vt. 303; *Backman* v. *Wright*, 27 Vt. 187; *Backman* v. *Mussey*, 31 Vt. 547.

WATSON, J. The record shows that the orders for intoxicating liquor were sent by the purchaser, Frederick Fenn, by mail or by telegraph from Rutland, this State, to New York City, and that the goods so ordered were shipped to him on such orders, he paying the freight, all in accordance with a previous arrangement entered into between him and the petitioner in the city of New York. Clearly the place of the contract was in New York. *Tuttle & Reed* v. *Holland*, 43 Vt. 542; *Backman* v. *Mussey*, 31 Vt. 547; *Bacon* v. *Hunt & Co.*, 72 Vt. 98, 47 Atl. 394. This case is distinguishable from that of *Beverwick Brewing Co.* v. *Oliver*, 69 Vt. 323, 37 Atl. 1110. There the goods were ordered by the purchaser at Burlington, this State, of the seller in Albany, New York, by letter or telegraph, pursuant to a previous arrangement made in this State, and it was held that the contract was partly made here and therefore that it was unenforceable. Nor does the fact that security, by way of a mortgage or mortgages, was taken in this State, in terms broad enough to cover payments of indebtedness for goods purchased and any other indebtedness of the purchaser to the petitioner,

operate to make the contract of sale of liquors, ordered and shipped as aforesaid, a contract wholly or in part made in Vermont. *DeWolf* v. *Johnson,* 10 Wheat. 367, 6. L. ed. 343.

Whether any part of the contract for the loan was in law made in this State, we need not inquire; for the entire consideration of the note was money loaned, and the part of the transaction pertaining thereto is severable from that particularly relating to indebtedness for goods sold. Consequently, though it be considered that the delivery of the check and the execution and delivery of the note and mortgage in Rutland, fix the place of the part of the contract particularly relating to the loan, as in this State, it does not affect the place of the part of the contract pertaining to the sale of goods. *Shaw* v. *Carpenter,* 54 Vt. 155, 41 Am. Rep. 837; *Osgood* v. *Central Vermont Ry. Co.,* 77 Vt. 334, 60 Atl. 137, 70 L. R. A. 930.

At the time this mortgage was given, the real estate covered by it was the property of Etta M. Fenn, the wife of Frederick Fenn, but it was not held to her sole and separate use, and Frederick held a freehold estate therein. *Laird, Assignee* v. *Perry,* 74 Vt. 454, 52 Atl. 1040, 59 L. R. A. 340.

Before the commencement of this suit, Frederick was adjudged a bankrupt by the United States District Court for the District of Vermont, and in the course of the proceedings the petitioner made proof of its claim, therein setting forth the fact that the claim was secured by a chattel mortgage on property owned by the bankrupt, and also by the mortgage here sought to be foreclosed, stating the date of the latter, the book and page of the records of the city of Rutland where recorded, the street on which the property mortgaged is situated in said city, together with the name of the block as known and called, that the property at the time of the execution of the mortgage (on information and belief) "stood in the name of said Etta M. Fenn and still stands in her name"; that the mortgage was made by said Etta M. and Frederick in favor of the petitioner and was intended as collateral security for the payment of the said note for four thousand dollars and to secure all moneys then due or thereafter to become due to the petitioner from said Frederick on open account or otherwise. The amount of the petitioner's claim was litigated in the bankruptcy proceedings, judgment being finally rendered therein against the bankrupt for the sum of $6,356.92 after deducting the sum realized from

the sale of his property covered by the chattel mortgage before mentioned. On the 17th day of January, 1908, the court of bankruptcy made its order discharging Frederick from all debts and claims provable against his estate, including the claim of the petitioner on which the latter received the sum of $444.95, the same being paid on August 1, 1910.

In the schedules filed by Frederick in his bankruptcy proceedings, to the question as to debts owing, secured and unsecured, he answered that the petitioner was a creditor holding securities, and described the securities as a "real estate mortgage on property of Etta M. Fenn," also naming the chattel mortgage. In answer to the question as to "Location and description of all real estate owned by the debtor or held by him," he named an undivided interest in mineral right situate in Bridgewater, this State, but named no other real estate owned by him or in which he had an interest; and under another schedule, in answer to the inquiry, "What general interest? Interest in land," he answered, "None."

Thus it is seen that in those proceedings the petitioner before us, in proving his claim, made full disclosure as to his security and as to the record title of the real estate covered by its mortgage, including the place of record; while the bankrupt gave the real estate covered by this mortgage as the "property of Etta M. Fenn," and in effect denied having any interest himself therein. The petitioner's standing in the court of bankruptcy was, then, through no fault of its own, that of a creditor having securities for the payment of its claim as follows: A chattel mortgage on property owned by the bankrupt, (which property was disposed of and the sum received therefor applied in fixing the amount of the claim;) and a mortgage on real estate owned by Etta M. Fenn, a person other than the bankrupt, in which real estate the bankrupt had no interest. Under these circumstances, the petitioner's proving its whole claim against the bankrupt estate and receiving the dividend thereon did not constitute a waiver of the last named mortgage, nor prevent resorting thereto for the unpaid portion of the mortgage debt. The law seems well settled that a creditor holding security for the payment of his claim, by way of property belonging to a person other than the bankrupt, is not deemed a "secured creditor" within the meaning of the bankruptcy law, and he may prove his entire claim against the

bankrupt estate and receive dividends thereon, and later enforce his claim upon the security for the balance. Collier on Bankruptcy, (3d ed.) 314; *In re Headley,* 97 Fed. 765, 3 Am. Bankr. Rep. 272; *In re Coe,* 1 Am. Bankr. Rep. 275; *In re Bailey,* 176 Fed. 990; *In re Shirt Co.,* 200 Fed. 80.

By the terms of the contract and arrangement, Frederick was entitled to a discount of a certain per cent. on the goods furnished him by Ballantine & Company, and certain other discounts on the goods furnished him by the petitioner, and it was the understanding and agreement between the parties that Fenn should pay the bills for goods in full and leave the discounts to be applied in reduction of the ''loan account.'' After a part˙ of the discounts had been so applied, the agreement was modified and changed, without the knowledge or consent of Etta M., so that some of the discounts were credited by the petitioner on the ''Bottled Ale Account'' and on the ''Draught Ale Account,'' and by Ballantine & Company, to the amount of $615.88, on their beer account. As to the applications made on the ''Bottled Ale Account'' and on the ''Draught Ale Account.'' Etta M. made no complaint, because the amounts due the petitioner thereon, if any, were secured by the mortgage on her property, but she did object to the application of the sum named on Ballantine & Company's beer account, claiming that by the terms of the original contract the same should have been applied on the petitioner's ''Loan Account.'' It is found that in making and giving the note and mortgage to the petitioner, Etta M. was merely a surety for her husband; and from the nature of the transaction and the terms of the arrangement made, this must have been known to the petitioner. Her undertaking as surety was to the petitioner, not to Ballantine & Company, and the ''beer account'' of the latter was not within it. We˙think the surety is entitled in equity to have the said sum of $615.88 of the discounts (which was applied on Ballantine & Company's beer account) applied on the petitioner's ''Loan Account,'' according to the original agreement, with interest on said sum from October 31, 1907. *Ferrisburg* v. *Birkett,* 60 Vt. 330, 14 Atl. 88; *Hansen* v. *Rounsavell,* 74 Ill. 238.

During all the years this business was going on, Frederick sent remittances, mostly by checks, from month to month to the petitioner and to Ballantine & Company. Sometimes the

checks were payable to P. Ballantine & Sons, sometimes to Ballantine & Company, and sometimes to both concerns together. All these checks were received by the petitioner and were applied by it to the credit of Frederick on its various accounts against him and on the beer account of Ballantine & Company, "in accordance with the original understandng and agreement of said parties, and the state of said accounts," so that sometimes a check payable to the order of Ballantine & Company was applied on one of the petitioner's accounts and sometimes a check payable to the order of the petitioner was applied on the beer account of Ballantine & Company, and sometimes checks payable to one or the other of said concerns were "split" and part applied on one account and part on another; and statements showing these various applications were sent to Frederick monthly. Annual statements were also sent to him, and notations were made by the petitioner's bookkeeper on the several checks showing how they were applied. These checks were received back from the bank on which they were drawn. Frederick made no objection to the various applications made until after the commencement of this suit.

Of the payments so made, checks were payable to Ballantine & Company to the aggregate amount of $7,207.20. There were applied on the account of that company payments aggregating the sum of $8,863.50. It is claimed by Etta M. that so much of the last named sum as is in excess of the checks payable to that company, namely, $1,656.30, should have been applied on the petitioner's accounts, and that she is entitled to have it applied now in reduction of the sum due thereon in equity. Regarding the applications of payments, the rule is stated in *Roakes* v. *Bailey & Newcomb,* 55 Vt. 542, as follows: "A debtor paying money to his creditor has the primary and paramount right to direct the application of his money to such items or demands as he chooses. This direction may be given in express terms, or it may appear by implication from the circumstances of the transaction. If the debtor pays with one intent and the creditor receives with another, the intent of the debtor shall govern. If no application is directed by the debtor, the creditor may make it." And in *Pierce, Clark & Co.* v. *Knight,* 31 Vt. 701, it is said: "All the authorities agree that the party making the payment has the right in the first instance to direct its application to either of several debts, or to

any particular part of a debt, where such application is capable of being made; and that the party receiving the payment is bound to apply it as directed." In the matters under consideration, the debtor unmistakably showed his intentions as to the application in the manner of making his checks payable, as well as by the creditor to whom he sent them. The petitioner, a corporation, was doing business with Frederick Fenn, as such. Ballantine & Company "was another concern operated by the same individuals," but whether it was a corporation or a partnership does not appear. Let it be either, it was a different creditor from the petitioner and, as before observed, not a party to, nor protected by, the contract of suretyship. In the way the business between the debtor and the two concerns was done, the acts of the debtor in making a check payable to one of the concerns and sending it to the concern named as payee, were tantamount to directing the application to be made on the account of that creditor; and when a check was drawn by the debtor, payable to both concerns and sent to either, he in effect directed that in the application the sum be divided between them.

We need not consider what the effect would be if it were found that the applications made by the petitioner were in fact as originally agreed by the parties, for this fact is not found. The finding that the applications were made by the petitioner "in accordance with the original understanding and agreement of said parties, and the state of said accounts," includes an element not within the understanding and agreement, namely, "the state of said accounts." If the petitioner would justify the applications made, on the ground of an original understanding and agreement of the parties, it must show them made in accordance therewith, independent of any additional, and perhaps controlling, element of consideration.

It is found in effect, however, that by way of the monthly and annual statements from the petitioner to the debtor, and by the notations on the checks returned to him, after payment, by the bank on which they were drawn, the debtor subsequently had notice of the various applications made by the petitioner, and that he made no objection thereto until after the commencement of this suit. Yet such silence on his part is not sufficient to show a ratification by him of the applications made on the account of Ballantine & Company, another creditor, to say

nothing of the rights of the surety. In *Eylar* v. *Read,* 60 Tex. 387, it was held that if the debtor, at the time of paying money to his creditor, directed it to be appropriated to the payment of a certain debt, secured by lien on the debtor's homestead, the fact that he was afterwards given a receipt by the creditor, declaring the money was received on "general account," did not make it incumbent upon the debtor to take steps to have the receipt changed, or in default of such action be precluded from insisting that the money be appropriated as directed; that his silence after he had once spoken and directed, as the law authorized him to do, that the money be appropriated in a certain way, could not confer upon the creditor any right to divert it; that nothing less than the consent of the debtor can confer such right after he has once directed to what the application be made. To the same effect is *Massengale* v. *Pounds,* 108 Ga. 762, 33 S. E. 72. The holding in the case of *Sawyer* v. *Howard,* 86 Vt. 63, 83 Atl. 535, is not to the contrary. There the debtor was given not only immediate notice of the application, to which he made no protest or complaint, but he received as paid the note on which the money was in part applied, with the note collateral thereto, and with full knowledge retained these notes a year without complaint, and did not even offer to return them at the trial.

Moreover, the entire indebtedness of Frederick to the petitioner was represented by the four thousand dollar note, the "Bottled Ale Account," and the "Draught Ale Account," all secured by the mortgage in question; and when he made payments to the petitioner by checks payable to it and sent to it, as stated above, the payments so made were applied by law at once in extinguishment of that indebtedness *pro tanto,* without regard to formal endorsement on the note, or entry of credit on account. *Lyon* v. *Witters,* 65 Vt. 396, 26 Atl. 588; *Farrington* v. *Jennison,* 67 Vt. 569, 32 Atl. 641; *Rowell* v. *Lewis,* 72 Vt. 163, 47 Atl. 783. And no application of those payments by the petitioner on the account of Ballantine & Company, though subsequently ratified by Frederick, could be effective against the surety without her consent. *Hurd* v. *Spencer,* 40 Vt. 581; *Ellis* v. *Allen,* 48 Vt. 545. It follows that the said sum of $1,656.30, with interest thereon from October 17, 1907, (the time found by the master), should be applied in reduction of the sum due in equity upon the mortgage in suit.

*Decree affirmed and cause remanded with directions that the decree be altered so as to conform to the views expressed in this opinion, with costs to the defendants in this Court. Let a new time of redemption be fixed.*