CITIZENS' SAVINGS BANK AND TRUST COMPANY *v.* AMANDA
JENKINS, GEORGE JENKINS AND SHERBURNE LANG.

May Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed November 13, 1916.

*Husband and Wife—Rights of Husband in Wife's Real Estate*
*—Wife's Separate Property—Tenancy by Entirety—In-*
*terest of Wife in Property so Held—Estates by Entirety in*
*Personal Property—Timber Cut from Land Held in En-*
*tirety—Application of Proceeds—Agency of Husband—*
*Estoppel—Burden of Proof.*

A husband has a freehold interest in the real estate of his wife,
not held to her sole and separate use, and is entitled to its man-
agement and control as to the rents and profits thereof.

Under the statutes of this State as they now are, and the holdings of
this Court applicable to such statutes, a married woman holds as
her separate, or, as is sometimes said, as her quasi-separate prop-
erty, her interest in property of which she and her husband are
tenants by entirety, and her estate so held is held to the exclusion
of the common law marital rights of her husband therein.

Estates by entirety may exist in personal property growing out of
real estate as well as in real estate strictly, and the cutting of
timber by mutual consent upon real estate held by entirety
effects in equity only a transmutation of property from real to
personal but does not change the character of the estate in the
timber cut.

It will be presumed that a husband and wife, who are tenants by
entirety in certain real estate, hold the timber cut therefrom
in the same way that they held the land from which it was cut.

Where timber growing upon land held by a husband and wife as ten-
ants by entirety was cut by mutual consent and sold by the hus-
band, the wife had a right to have the proceeds thereof applied
on a mortgage given by herself and her husband and covering the
land in question, in the absence of facts showing, as matter of law,
an agency in the husband to apply the money otherwise than on

the mortgage, or operating to estop the wife from so claiming the right.

On the facts found, *held*, there was not, as matter of law, such an agency on the part of a husband on behalf of his wife, as enabled him, in advance and without the knowledge of his wife, to agree that the proceeds of the sale of timber cut from land held by him and his wife by entirety should be applied upon his individual indebtedness, and not upon a mortgage signed by the husband and wife covering the land so held by them.

On the facts found, *held*, that the wife was not estopped from insisting that the proceeds of the sale of timber cut from land owned by her and her husband in the entirety should be applied upon a mortgage signed by the husband and wife and covering the land so held by them, and not upon notes signed by the husband alone, and representing his sole debt.

Where the plaintiff bank claimed that a husband was acting as agent for his wife in a certain transaction, the burden was on it affirmatively to establish all the facts which it claimed constituted such agency, as matter of law.

APPEAL IN CHANCERY.. Petition to foreclose a mortgage upon real estate. After a decree for the petitioner, the case was referred to a special master to find and report the sum due in equity, who found that if a certain payment amounting to $798.86 should not be applied upon the mortgage indebtedness, there was due the sum of $2,069.49, but if the foregoing payments should be so applied the sum due was $1,129.78. Heard on the report of the special master in vacation after the December Term, 1915, Caledonia County, *Miles*, Chancellor. Decree that there was due the petitioner the smaller of the two sums reported. The petitioner appealed. The opinion states the case.

*Joseph Fairbanks* and *Porter, Witters & Harvey* for the petitioner.

*Cook & Norton* for the defendants.

HASELTON, J. This is a proceeding to foreclose a mortgage given by Geo. W. Jenkins and his wife Amanda upon real estate held by them as an estate by entirety. No defence was

made as to Lang, and when the "defendants" are spoken of he is not included in the term, but George W. Jenkins and Amanda Jenkins are meant. The case was referred to a special master, and on his report the only question was as to the sum due in equity. The master reported in the alternative; and the court of chancery adjudged that there was due the plaintiff $1,129.79, the smaller sum reported conditionally as due, and rendered a decree accordingly. The plaintiff appealed, claiming that the amount due was $2,069.49, the larger sum conditionally named in the master's report. The findings as to the amount due under the mortgage relate to June 8, 1915.

The difference in the conditional findings results from the application upon the mortgage debt of the sum of $798.86, which the plaintiff claims should not have been so applied, but should have been applied upon the individual indebtedness of George W. Jenkins to the plaintiff.

The mortgage on the defendants' estate by entirety, also spoken of in the report as their home place, was given July 23, 1907, and was conditioned for the payment to the bank of a note of that date, signed by George W. and Amanda and for the payment of all other demands which the bank might at any time have against them.

Prior to November 2, 1910, George had a portable mill on the mortgaged premises and had been engaged, to some extent, in cutting, sawing and marketing lumber.

On that day he entered into a written contract with the National Flooring Company, a corporation located at St. Johnsbury, by which he sold that company all the sawed lumber then in his mill-yard, and also all the sawed lumber cut and sawed or to be cut and sawed by him from timber conveyed to him on certain lots in the town of Wheelock.

The Flooring Company, by this contract, agreed to advance him money on his notes. The Flooring Company had already advanced him $2,200. He was without means to carry on his lumbering operations without financial aid, and as security for the advancements, made and to be made, he agreed to and did give the Flooring Company a chattel mortgage on all lumber then in his mill-yard, and on all logs and lumber cut or to be cut from the timber described in the contract, that is, from the timber on the lots referred to in the town of Wheelock.

Following this contract of November 2, 1910, it was the custom of the Flooring Company to make advancements to Jenkins, for him to give it his notes therefor, for it to indorse them over to the plaintiff bank and for the bank to discount them.

As lumber was delivered to the Flooring Company by Jenkins, such company from time to time made, to the plaintiff bank, payments representing the purchase price of the lumber so delivered, and these payments were applied by the bank on the notes of Jenkins given by him and indorsed by the Flooring Company as already detailed.

At the time of the contract in 1910 and until January or the first part of February, 1912, one Hastings was president and general manager of the Flooring Company. Then, that company, having become financially embarrassed, shut down its mill, and was thereafter in process of liquidation. Then, Joseph Fairbanks, Esquire, became treasurer of the Flooring Company, and after that time looked after its financial interests and had full charge of its affairs.

In the fall of 1911, shortly before the Flooring Company shut down its mill, Mr. Jenkins commenced cutting lumber on the mortgaged premises held as an estate by entirety by Mr. and Mrs. Jenkins. Mr. Jenkins wished to ship the lumber that he was then there cutting to the Flooring Company, and after two or three interviews, arrangements were made between Mr. Jenkins and Mr. Hastings, the latter acting for the Flooring Company, by which he was to ship lumber from the home place as he had formerly shipped the lumber from the lots in Wheelock.

The arrangement was made in September or October, 1911, and by it the manner of dealing as to payments and advancements was to be the same as had been the manner of dealing in those respects with reference to the lumber from the lots in Wheelock.

Mr. Hastings of the Flooring Company had then no knowledge of the bank's mortgage. After this arrangement was made Mr. Jenkins shipped to the Flooring Company nine cars of lumber before February 14, 1912, one car on February 16, 1912, and one car on June 8 following. Lumber from the lots in Wheelock and lumber from the home place were commingled.

Between December 22, 1911 and February 3, 1912, the Flooring Company made advances to Mr. Jenkins for which he

gave notes that the Flooring Company indorsed and the plaintiff bank discounted.

Mr. Fairbanks was a director of the bank, and, as soon as he came to take the place of Mr. Hastings in the control of the Flooring Company, and learned that Mr. Jenkins was cutting lumber from the premises covered by the bank's mortgage, he made known to Mr. Jenkins objections to the advancement of further sums without the consent of the bank. Thereupon, on February 14, 1912, a date already mentioned, Mr. Jenkins, a Mr. Ritchie, who was the bank's treasurer, and Mr. Fairbanks met at the bank for a conference. At this conference the bank consented to the advancing of a limited amount of money on notes of Mr. Jenkins indorsed by the Flooring Company. The advancements were to be made for the purpose of enabling Mr. Jenkins to saw out the lumber cut on the mortgaged premises.

It was understood at this conference that Mr. Jenkins should continue to ship lumber, and that the proceeds should be applied on his notes indorsed by the Flooring Company.

On the same day, February 14, 1912, Mr. Fairbanks drew up, and Mr. Jenkins signed, an order by which Mr. Jenkins directed the Flooring Company to pay the bank the amount due him, for lumber sold and delivered by him to the Flooring Company, and also whatever might become due from the Flooring Company to him for lumber which he might sell and deliver to the Flooring Company in pursuance of the contract of November 2, 1910, the contract which related to the lumber from the lots in Wheelock. The order directed payments to such an amount as might be necessary to pay all of Jenkins' notes given or to be given to the Flooring Company for advancements under the indicated contract, described as owned by the bank.

In consideration of this order of February 14, 1912, the bank, on that day, advanced to Jenkins $225. It made another advancement of $100 on March 19, following. For these advancements Jenkins gave his notes which were indorsed by the Flooring Company. These were all the advancements made after the order named.

Two days after the order was given, that is, on February 16, 1912, Jenkins shipped a car-load of lumber as already stated. This was of the value of $99. When the Flooring Company shut down its mill, Mr. Hastings, its president, once notified Jenkins not to ship any more lumber ''at present.'' Later

Hastings once, and Mr. Fairbanks twice, asked Jenkins to ship lumber to the Flooring Company. However, after the first notice from Hastings, Jenkins shipped only the one car-load hereinbefore stated to have been shipped June 8, 1912. It was of the value of $69.48.

There was no claim before the master that all of the lumber cut from the lots in Wheelock was not shipped to the Flooring Company. Mr. Jenkins shipped to the Parker & Young Company and B. F. Andrews, Sons and Company lumber which came entirely from the home place covered by the mortgage of Mr. and Mrs. Jenkins to the bank. The precise dates of the shipments do not appear.

However, Andrews, Sons and Company sent to the plaintiff bank $241.20 which it received June 21, 1912, and which the assistant treasurer of the bank applied on the notes secured by the mortgage of the Jenkins, on their home place. At this time the assistant treasurer did not know of the order of Mr. Jenkins of February 14, 1912.

July 20, 1912, Jenkins gave the bank a written notice which read: "I am this day giving you an order on Parker & Young Co., of Lisbon, N. H., for lumber shipped to this said company, which was lumber cut off from our farm in Lyndon, which you have a mortgage on, and the proceeds of this lumber must be applied on our mortgage note, for said lumber was cut off from said farm in Lyndon, which you have a claim on, as per agreement." The notice was signed by Mr. Jenkins alone.

Against the claim of the bank to the contrary, the master finds that it in fact received a like notice as to B. F. Andrews, Sons and Company. After receiving the notice as to lumber shipped to the Parker & Young Company, that company sent to the bank a payment of $467.93, which was received August 19, 1912; and B. F. Andrews, Sons & Company, sent to the bank a payment of $89.81, which was received August 28, 1912. No application of the two sums last mentioned was made when they were received. September 23, 1912, the bank brought a suit against Jenkins, and shortly thereafter filed specifications for the full amount of his individual notes held by it. However, in a letter to the attorney for Jenkins, the bank stated that the Flooring Company claimed that the sums received from B. F. Andrews, Sons & Company and the Parker & Young Company should be applied on the notes of Jenkins that the

Flooring Company had indorsed, while Mr. Jenkins claimed that those sums should be indorsed on the debt secured by the mortgage on the home place. The bank explained to Mr. Jenkins' attorneys that in filing such a specification as they did, they made no concession or admission that the sums just referred to should not be applied in accordance with the contention of the Flooring Company.

After the commencement of this suit Jenkins went into bankruptcy, and later procured his discharge.

March 15, 1913, while Jenkins was in bankruptcy and the Flooring Company was insolvent, the plaintiff applied the sums now under consideration on the notes of Jenkins indorsed by the Flooring Company. These sums amount to $798.86, and the question in this case is whether they were rightly applied on the individual notes of George W. Jenkins, or whether they should operate as payments on the indebtedness of Mr. and Mrs. Jenkins secured by the mortgage given by them and in process of foreclosure in this suit. The master says that the plaintiff acted with full knowledge as to the title to the mortgaged premises and the rights of Mrs. Jenkins therein. The plaintiff claimed before the master that Mr. Jenkins was the agent of his wife by direct appointment, but failed to establish this claim.

The master also finds that Mrs. Jenkins never specifically assented, either to her husband or to the plaintiff, that the avails of the lumber from the home place might be applied upon the individual indebtedness of her husband. The master then recites certain facts, hereinafter to be referred to, and says that unless such facts constitute an agency, as matter of law, or operate as an estoppel against Mrs. Jenkins, then she has the right to have the payments in question applied upon the mortgage indebtedness, whatever the rights of the plaintiff may be as to Mr. Jenkins.

The plaintiff says that this is a statement of the master's view of the law, and discusses at some length the proposition that without regard to any question of agency, Mr. Jenkins had a common law right to do what he choose with this lumber after it was cut down with the consent of his wife. This question we first discuss.

A husband has a freehold interest in the real estate of his wife, not held to her sole and separate use, and is entitled to

its management and control and to the rents and profits thereof. *Ballantine & Sons* v. *Fenn*, 88 Vt. 166, 92 Atl. 3; *Bishop* v. *Readsboro Chair Mfg. Co.*, 85 Vt. 141, 81 Atl. 454, 36 L. R. A. (N. S.) 1171, Ann. Cas. 1914 B, 1163; *Ainger* v. *White's Adm'r.*, 85 Vt. 446, 82 Atl. 666; *Laird* v. *Perry*, 74 Vt. 454, 52 Atl. 1040, 59 L. R. A. 340. . And this doctrine applied at common law to an estate by entirety, and determined the marital rights of the husband in the real estate so owned by the wife, and the doctrine has been applied in this State when we have had no statute inconsistent therewith. *Corinth* v. *Emery*, 63 Vt. 505, 22 Atl. 618, 25 Am. St. Rep. 780; *Laird* v. *Perry*, 74 Vt. 454, 52 Atl. 1040, 59 L. R. A. 340.

*Corinth* v. *Emery* was decided in 1891, and we then had a statute which, as construed, made the wife's estate in entirety her sole and separate property. R. L. 2324.

By the revision of 1894, this statute was repealed, and in *Laird* v. *Perry*, decided in 1902, this fact was pointed out, and the necessary conclusion reached that we were again governed by the common law in respect to estates by entirety, and that the husband had in such cases not only his estate, but common law marital rights in the estate of the wife. But at the next session of our Legislature the act that governed in *Corinth* v. *Emery* was re-enacted by No. 45 of the Acts of 1902, now P. S. 3941.

The plaintiff in his brief recognizes the fact that the decision in *Laird* v. *Perry* cannot be considered as law under the present statute, but he refers to that case for its careful definition of a husband's rights. But the definition referred to is of the rights of a husband in the real estate of his wife not her sole and separate property, then but not now, including her estate where she and her husband hold by entirety.

Her such estate is now by virtue of the statute deemed to be her separate property; and neither a wife's separate property, nor the rents, issues, income or products of the same are subject to the disposal of her husband. P. S. 3040.

Under our statutes in relation to the property of married women as they now are, and our holdings applicable to such statutes, a married woman holds as separate, or as is sometimes said in construing similar statutes, as her quasi-separate property, her interest in property of which she and her husband are tenants by entirety, and her estate so held is held to the

exclusion of the common law marital rights of her husband therein. *Corinth* v. *Emery*, 63 Vt. 505, 22 Atl. 618, 25 Am. St. Rep. 780. For like decisions in other states construing statutes similar to ours, see *Morrill* v. *Morrill*, 138 Mich. 112, 101, N. W. 209, 110 Am. St. Rep. 306, 4 Ann. Cas. 1102, and 13 R. C. L. 1129, 1130.

The wife consented to the cutting of the timber from the estate by entirety. But that fact alone left the interest in the timber an estate by entirety so far as this equitable proceeding is concerned.

For, estates by entirety may exist in personal property growing out of real estate as well as in real estate strictly, and the cutting of the timber by mutual consent effected in equity only a transmutation of property from real to personal, but did not change the character of the estate in the timber cut.

The presumption is that Mr. and Mrs. Jenkins held the cut timber, in the same way that they held the land from which it was cut. *Jones* v. *Smith*, 149 N. C. 318, 62 S. E. 1092, 19 L. R. A. (N. S.) 1037, 128 Am. St. Rep. 661; *In re Bramberry*, 156 Pa. St. 628, 27 Atl. 405, 22 L. R. A. 594, 36 Am. St. Rep. 64; *Den* v. *Handenbergh*, 10 N. J. Law (5 Halst.) 42, 18 Am. Dec. 371, and notes 382, 383.

So the husband had not a common law right, after this timber was cut to do with it as he chose, and we come back to the statement of the master that unless certain facts stated by him show, as matter of law, an agency in the husband, or operate to estop Mrs. Jenkins, she had a right to have the payment in question applied on the mortgage given by herself and her husband and covering the estate held by them as an estate by entirety.

We grant that the master's statement embodies a statement of law but we regard it as a sound statement of law applicable to this case. The facts referred to by the master on the question of whether they show an agency, as matter of law, omitting those which relate to the cutting and sawing of lumber on the home place, which are immaterial, as they do not relate to the disposition made of the lumber, are these:

Mrs. Jenkins had knowledge of the shipments of lumber by her husband in his own name to the Flooring Company, and that the checks received in payment therefor were made to his order. One such check she took to the bank and received the

money therefor which she turned over to her husband. She had knowledge that this money was used in paying help then at work getting out lumber on the mortgaged premises, a business which she allowed him to manage with little interference on her part. A short time previous to February 14, 1912, she and her husband had an interview with Mr. Fairbanks in which her husband asked for more money for the purpose of paying help, and Mr. Fairbanks refused such request, at that time, for the reason that the lumber was being cut from the mortgaged premises. The contract with reference to the lumber from her husband's lots in Wheelock was referred to at that time. Further than what has been stated it is not found what was said by, to or in the presence of Mrs. Jenkins.

In 1911, Mrs. Jenkins had written to the treasurer of the plaintiff objecting to its letting her husband have money. The letters, however, were not produced, and it did not appear how specific her objections were. It did not appear from the evidence that Mrs. Jenkins had any knowledge of the order of February 14, 1912, above referred to by which her husband directed the Flooring Company to make payment to the bank of money due him from the Flooring Company, as appears by the order hereinabove described. Nor did it appear that she had knowledge of the advancement made to him by the bank that day, nor of the advancement made later. These negative findings are equivalent here to findings that she did not have knowledge, for the burden was on the plaintiff to establish affirmatively all the facts which it claimed constituted an agency, as matter of law.

The order and directions to the bank with reference to the lumber shipped to Parker & Young Company and B. F. Andrews, Sons & Company were given with her knowledge.

The lumber so shipped came entirely from the home place, and the orders to the bank were that the sums in payment therefor be applied on the mortgage indebtedness secured on the home farm.

These payments are the ones about which the dispute here arises. It is apparent that the facts recited do not, as matter of law, constitute such an agency on the part of the husband as enabled him, in advance and without the knowledge of Mrs. Jenkins, to provide that these payments not coming from the Flooring Company and not affected by any agreement of which

Mrs. Jenkins had knowledge, should be applied on his individual indebtedness.

The burden of showing the agency which the plaintiff claimed was upon the plaintiff, and as there was no finding of agency, and as the facts reported do not as matter of law show an agency nor necessitate a finding of agency, the decree of the court which impliedly negatived agency must stand. *Plumley v. Plumley*, 84 Vt. 286, 79 Atl. 45; *Rutland Ry., etc., Co.* v. *Williams*, 90 Vt. 276, 98 Atl. 85.

Nor do the facts reported as above recited estop Mrs. Jenkins from insisting that these payments should be applied on the indebtedness secured by the mortgage herein sought to be foreclosed, a mortgage signed by both husband and wife, and covering the farm held by them by entirety, from which was cut off the lumber for which the payments in question were made.

*Decree affirmed and cause remanded.*